IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO.: _____

GREAT AMERICAN INSURANCE
COMPANY, a foreign corporation,

      Plaintiff,

v.

ALPHATEC CORP., a Florida Corporation,
BRUNO TORRES, an individual, MARCOS
DEL CRISTO, an individual, MIGUEL DEL
CRISTO, an individual, REBECCA DEL CRISTO,
an individual, VICENTE MONTEAGUDO,
an individual, CATHERINE FUENTES MARTIN,
an individual,

      Defendants.
_____/

## COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

Plaintiff, GREAT AMERICAN INSURANCE COMPANY, hereby sues the Defendants,

ALPHATEC CORP., BRUNO TORRES, MARCOS DEL CRISTO, MIGUEL DEL CRISTO,

REBECCA DEL CRISTO, VICENTE MONTEAGUDO, and CATHERINE FUENTES

MARTIN, and states as follows:

### I. JURISDICTION AND VENUE

1.     This is an action for damages and equitable relief.

2.     Subject matter jurisdiction is based upon 28 U.S.C. §1332(a)(1), diversity of

citizenship. The parties are citizens of different states and the amount in controversy exceeds the

jurisdictional limits of this Court.

3.     Plaintiff, GREAT AMERICAN INSURANCE COMPANY ("GAIC"), is a

corporation organized and existing under the laws of the State of Ohio, whose principal place of

CASE NO.: _____

business is located in Cincinnati, Ohio, and which is registered with and authorized to do business within the State of Florida. GAIC is a citizen of the State of Ohio.

4.      Defendant, ALPHATEC CORP. ("ALPHATEC"), is for-profit corporation organized and existing under the laws of the State of Florida, whose principal place of business is located in Miami, Miami-Dade County, Florida. ALPHATEC is a citizen of the State of Florida.

5.      Defendant, BRUNO TORRES, is an individual who resides in Coral Springs, Broward County, Florida, and who is otherwise *sui juris*. BRUNO TORRES is a citizen of the State of Florida.

6.      Defendant, MARCOS DEL CRISTO, is an individual who resides in Miami, Miami-Dade County, Florida, and who is otherwise *sui juris*. MARCOS DEL CRISTO is a citizen of the State of Florida.

7.      Defendant, MIGUEL DEL CRISTO, is an individual who resides in Miami, Miami-Dade County, Florida, and who is otherwise *sui juris*. MIGUEL DEL CRISTO is a citizen of the State of Florida.

8.      Defendant, REBECCA DEL CRISTO, is an individual who resides in Miami, Miami-Dade County, Florida, and who is otherwise *sui juris*. REBECCA DEL CRISTO is a citizen of the State of Florida.

9.      Defendant, VICENTE MONTEAGUDO, is an individual who resides in Hialeah, Miami-Dade County, Florida, and who is otherwise *sui juris*. VICENTE MONTEAGUDO is a citizen of the State of Florida.

10.     Defendant, CATHERINE FUENTES MARTIN, is an individual who resides in Hialeah, Miami-Dade County, Florida, and who is otherwise *sui juris*. CATHERINE FUENTES MARTIN is a citizen of the State of Florida.

CASE NO.: _____

11.     Venue is proper in this Court because it is the situs where the legal obligation arose, where ALPHATEC conducted business which gives rise to the instant claims, and where at least one of the Defendants resides.

12.     All conditions precedent to the filing of the instant action have occurred or have otherwise been waived.

## II. GENERAL ALLEGATIONS

### A.     McFatter Technical College Project

13.     On or about September 15, 2020, the BEC Group Services Inc. ("BEC"), as general contractor, and ALPHATEC, as subcontractor, entered into a written contract (the "*McFatter Subcontract*") for the furnishing of labor, materials and services for electrical improvement at the real property commonly known as "GOB Renovations – McFatter Technical College (the "McFatter Project").

14.     On or about October 28, 2020, GAIC, as surety, and on behalf of ALPHATEC, as principal, issued separate and distinct *Subcontractor's Performance Bond* and *Subcontractor's Payment Bond*, each bearing no. 321-93-16 (collectively, the "*McFatter Bonds*") in connection with the *McFatter Subcontract*. True and correct copies of the *McFatter Bonds* are attached hereto and made a part hereof as **Composite Exhibit "A"**.

15.     During the performance of the *McFatter Subcontract*, issues arose between BEC and ALPHATEC, resulting in claims being asserted against ALPHATEC and GAIC under the *McFatter Subcontractor's Performance Bond*.

16.     GAIC is currently undertaking its investigation of the claims being asserted by BEC against ALPHATEC, under a complete reservation of rights under the *McFatter Subcontractor's Performance Bond*.

CASE NO.: _____

17.     Although currently unaware of the existence of same, GAIC remains fearful that it may remain liable for additional amounts under the *McFatter Subcontractor's Payment Bond* for claims which may be asserted by ALPHATEC's lower-tier materialmen, suppliers and/or vendors on the McFatter Project.

18.     GAIC has been required to retain the undersigned counsel to represent its interests in investigating, defending against and/or resolving the claims asserted by BEC against the *McFatter Subcontractor's Performance Bond.*

**B.      Attucks Middle School Project**

19.     On or about October 28, 2020, BEC, as general contractor, and ALPHATEC, as subcontractor, entered into a written contract (the "*Attucks Subcontract*") for the furnishing of labor, materials and services for electrical improvement at the real property commonly known as "SMART Program Renovations – Attucks Middle School" (the "Attucks Project").

20.     On or about November 2, 2020, GAIC, as surety, and on behalf of ALPHATEC, as principal, issued separate and distinct *Subcontractor's Performance Bond* and *Subcontractor's Payment Bond,* each bearing no. 321-93-15 (collectively, the "*Attucks Bonds*") in connection with the *Attucks Subcontract*. True and correct copies of the *Attucks Bonds* are attached hereto and made a part hereof as **Composite Exhibit "B"**.

21.     During the performance of the *Attucks Subcontract*, issues arose between BEC and ALPHATEC, resulting in claims being asserted against ALPHATEC and GAIC under the *Attucks Subcontractor's Performance Bond.*

22.     GAIC is currently undertaking its investigation of the claims being asserted by BEC against ALPHATEC, under a complete reservation of rights under the *Attucks Subcontractor's Performance Bond.*

CASE NO.: _____

23.     Although currently unaware of the existence of same, GAIC remains fearful that it may remain liable for additional amounts under the *Attucks Subcontractor's Payment Bond* for claims which may be asserted by ALPHATEC's lower-tier materialmen, suppliers and/or vendors on the Attucks Project.

24.     GAIC has been required to retain the undersigned counsel to represent its interests in investigating, defending against and/or resolving the claims asserted by BEC against the *Attucks Subcontractor's Performance Bond.*

C.     **Olsen Middle School Project**

25.     On or about November 12, 2020, Johnson-Laux Construction, LLC ("Johnson-Laux"), as general contractor, and ALPHATEC, as subcontractor, entered into a written contract (the "*Olsen Subcontract*") for the furnishing of labor, materials and services for electrical improvement at the real property commonly known as "Olsen Middle School SMART Program Renovations" (the "Olsen Project").

26.     On or about March 2, 2021, GAIC, as surety, and on behalf of ALPHATEC, as principal, issued separate and distinct *Performance Bond* and *Payment Bond,* each bearing no. 321-93-28 (collectively, the "*Olsen Bonds*") in connection with the *Olsen Subcontract*. True and correct copies of the *Olsen Bonds* are attached hereto and made a part hereof as **Composite Exhibit "C"**.

27.     During the performance of the *Olsen Subcontract*, issues arose between Johnson-Laux and ALPHATEC, resulting in claims being asserted against ALPHATEC and GAIC under the *Olsen Performance Bond.*

CASE NO.: _____

28.     GAIC is currently undertaking its investigation of the claims being asserted by Johnson-Laux against ALPHATEC, under a complete reservation of rights under the *Olsen Performance Bond.*

29.     Although currently unaware of the existence of same, GAIC remains fearful that it may remain liable for additional amounts under the *Olsen Payment Bond* for claims which may be asserted by ALPHATEC's lower-tier materialmen, suppliers and/or vendors on the Olsen Project.

30.     GAIC has been required to retain the undersigned counsel to represent its interests in investigating, defending against and/or resolving the claims asserted by Johnson-Laux against the *Olsen Performance Bond.*

### D.     The *Indemnity Agreement*

31.     As a condition precedent to GAIC issuing the *Bonds* on behalf of ALPHATEC, on or about October 23, 2020, each of ALPHATEC, BRUNO TORRES, MARCOS DEL CRISTO, MIGUEL DEL CRISTO, REBECCA DEL CRISTO, VICENTE MONTEAGUDO, and CATHERINE FUENTES MARTIN (collectively, the "INDEMNITORS"), executed an *Agreement of Indemnity* (the "*Indemnity Agreement*") in favor of GAIC. A true and correct copy of the *Indemnity Agreement* is attached hereto and made a part hereof as **Exhibit "D"**.

32.     Pursuant to the Second Article of the *Indemnity Agreement*, the INDEMNITORS, jointly and severally, agreed to indemnify and hold GAIC harmless from and against any losses and/or expenses incurred as a result of GAIC's issuance of the various bonds, including the *McFatter Bonds, Attucks Bonds*, and *Olsen Bonds* (collectively, the "*Bonds*"):

> ***The Undersigned, jointly and severally shall <u>exonerate, indemnify, hold harmless and keep the Surety indemnified from and against any and all liability for losses, costs, and/or expenses</u> of whatsoever kind or nature*** (including, but not limited to, interest, court costs, consultant or expert fees, and counsel fees) and from and against any and all such losses and/or expenses which the Surety may sustain and incur: (1) By reason of being

6

requested to execute or procure, or having executed or procured the execution of Bonds on behalf of any of the Undersigned, (2) By reason of the failure of the Undersigned to perform or comply with any of the covenants and conditions of this Agreement or (3) In enforcing any of the terms, covenants or conditions of this Agreement. (Emphasis added).

33.     Pursuant to the Second Article of the *Indemnity Agreement*, the INDEMNITORS, jointly and severally, agreed to, upon demand, post collateral with GAIC sufficient to secure GAIC from and against any and all claims asserted against the *Bonds*, and further agreed that GAIC may obtain injunctive relief to enforce such obligation:

> *... **Payment by reason of the aforesaid causes shall be made to the Surety by the Undersigned, <u>upon demand by the Surety, as soon as liability exists or is asserted against the Surety, whether or not the Surety shall have made any payment therefor</u>***. The amount of such payment to the Surety by the Undersigned shall be determined by the Surety and the Surety's demand for payment hereunder may, at the Surety's option, be in addition to and not in lieu of or substitution of any other collateral that may have been previously deposited with Surety by or on behalf of the Undersigned. The Surety shall have right to use the payment, or any part thereof, in payment or settlement of any liability, loss or expense for which the Undersigned would be obligated to indemnify the Surety under the terms of this Agreement... (Emphasis added).

34.     Pursuant to the Second Article of the *Indemnity Agreement*, the INDEMNITORS, jointly and severally, agreed to be liable to GAIC for any amounts incurred by GAIC which GAIC believed it may be liable for and/or for any payments which GAIC believed it to be expedient for GAIC to issue under the *Bonds*:

> … In the event of any payment of any kind by the Surety, the Undersigned further agree that in any accounting between the Surety and the Undersigned, the ***<u>Surety shall be entitled to charge for any and all disbursements made by the Surety in good faith in and about the matters herein contemplated by this Agreement under the belief that the Surety is or was liable for the sums and amounts so disbursed, or that it was necessary or expedient for the Surety to make such disbursements</u>***, whether or not such liability, necessity or expediency existed; and that the vouchers, invoices, an affidavit or other evidence of any such payments made by the Surety shall be prima facie evidence of the fact and amount of the Undersigned's liability to the Surety…. (Emphasis added).

CASE NO.: _____

35.     Pursuant to the Second Article of the *Indemnity Agreement*, the INDEMNITORS, jointly and severally, agreed that GAIC may obtain injunctive relief to enforce the INDEMNITORS' indemnity and collateral obligations:

> ... The Undersigned acknowledge that the failure of the Undersigned to deposit with the Surety, immediately upon demand, the sum demanded by the Surety as payment ***shall cause irreparable harm to the Surety for which the Surety has no adequate remedy at law.*** The undersigned agree that ***Surety shall be entitled to injunctive relief for specific performance of any or all of the obligations of the Undersigned under this Agreement*** including the obligation to pay to the Surety the sum demanded and hereby waive any claims or defenses to the contrary. (Emphasis added).

36.     Pursuant to the Third Article of the *Indemnity Agreement*, the INDEMNITORS, jointly and severally, assigned, transferred and conveyed to GAIC all rights of the INDEMNITORS in and to any and all contracts, both bonded and unbonded, including unpaid and outstanding balances due thereunder, upon any event of default under the *Indemnity Agreement*:

> The ***Undersigned hereby consenting, will assign, transfer and set over, and do hereby assign, transfer and set over to the Surety***, as collateral, to secure the obligations in any and all of the paragraphs of this Agreement and any other indebtedness and liabilities of the Undersigned to the Surety, whether heretofore or hereafter incurred, the assignment to become effective retroactive to the date of the first Bond, but only in the event of (1) any abandonment, forfeiture or breach of alleged breach of any contracts referred to in the Bonds or any breach or alleged breach of any Bonds:
>
> (a)     ***All the rights of the Undersigned in, and growing in any manner out of the Bonds or any contracts referred to in the Bonds*** …. (Emphasis added)

37.     Pursuant to the Fourth Article of the *Indemnity Agreement*, the INDEMNITORS, jointly and severally, agreed that all contract funds received by the INDEMNITORS under the various subcontracts, including the *McFatter Subcontract, Attucks Subcontract*, and *Olsen Subcontract* (collectively, the "*Subcontracts*") would be held in "trust" for the benefit of GAIC's obligations under the *Bonds*:

CASE NO.: _____

Undersigned covenant and agree that all funds received by them, or due or to become due under any contract covered by any Bond ***are trust funds*** whether in the possession of the Undersigned or another, ***for the benefit of all parties to whom the Undersigned incurs obligations in the performance of the contract covered by the Bond(s)*** and/or for the benefit of, payment to or reimbursement of the Surety for any liability, loss or expense the Surety may incur under the Bond(s) or in enforcing this Agreement. (Emphasis added).

38.     Pursuant to the Tenth Article of the *Indemnity Agreement*, the INDEMNITORS,

jointly and severally, obligated themselves to make available for examination any and all books,

records and accounts of the various INDEMNITORS:

At any time, and until such time as the liability of the Surety under any and all Bonds is terminated, the ***Surety shall have the right to examine and copy the books, records, and accounts of the Undersigned***; and any bank depository, materialmen, supply house, or other person, firm or corporation. when requested by the Surety. is hereby authorized and directed by the Undersigned to furnish the Surety with any information requested including, but not limited to, the status of the work under contracts being performed by the Undersigned, the condition of the performance of such contracts and payments of accounts. The Undersigned agree to provide any additional releases, requests, waivers or any other documents required in order to allow the surety access to the requested information. (Emphasis added).

39.     Pursuant to the Fourteenth Article of the *Indemnity Agreement*, the

INDEMNITORS, jointly and severally, agreed that GAIC may settle any and all claims asserted

against the *Subcontracts* and/or *Bonds*:

The ***Surety shall have the right to adjust, settle or compromise any claim, demand, suit, arbitration proceeding or judgment upon the Bonds***. The liability of the Undersigned to the Surety under this Agreement shall extend to and include all amounts paid by the Surety under the belief that: (1) ***the Surety was or might be liable therefor***: or (2) such payments ***were necessary or advisable to protect any of the Surety's rights*** or to avoid or lessen Surety's liability or alleged liability. Further, the liability of the Undersigned to the Surety under this Agreement shall include interest from the date of Surety's payment at the maximum rate permitted in the jurisdiction in which this Agreement is enforced, or is enforceable. Further the ***Surety shall have the right to adjust, settle, prosecute, compromise or pursue recovery in connection with any claim, demand, suit, arbitration***

CASE NO.: _____

*proceeding or judgment in connection with any contract whether bonded*
*or not*, or in connection with any matters that are the subject of Paragraph
3 "Assignment" of this Agreement. (Emphasis added)

### E.      Demands Under the *Indemnity Agreement*

40.      On December 2, 2022, GAIC made demand upon the INDEMNITORS for the
delivery of all relevant documentation related to the BEC claims against ALPHATEC and GAIC
on the McFatter Project. A true and correct copy of the December 2, 2022 letter is attached hereto
as **Exhibit "E"**.

41.      On January 12, 2023, GAIC made demand upon the INDEMNITORS for the
satisfaction of their indemnity obligations under the *Indemnity Agreement*, as well as for the
posting of collateral on the McFatter Project in the amount of Eight Hundred Twenty-Four
Thousand and 00/100 Dollars ($824,000.00). A true and correct copy of the January 12, 2023,
letter is attached hereto as **Exhibit "F"**.

42.      On March 13, 2023, GAIC made demand upon the INDEMNITORS for the
satisfaction of their indemnity obligations under the *Indemnity Agreement*, as well as for the
posting of collateral on the Attucks Project in the amount of One Million One Hundred Sixty
Thousand and 00/100 Dollars ($1,160,000.00), and on the Olsen Project in the amount of Seven
Hundred Forty-Five Thousand Five Hundred and 00/100 Dollars ($745,500.00). A true and correct
copy of the March 10, 2023, letter is attached hereto as **Exhibit "G"**.

43.      Despite the foregoing demands, the INDEMNITORS have, to date, failed and/or
refused to fulfill their indemnity, collateral, and books and records production obligations to GAIC
under the *Indemnity Agreement*.

CASE NO.: _____

### F.  __GAIC's Losses and Expenses Under the *Indemnity Agreement*__

44.  GAIC has incurred unpaid losses and loss adjustment expenses (including but not limited to expenses associated with experts, consultants and attorneys) associated with its investigation, defense and/or handling of the above-described claims against the *Bonds*.

45.  GAIC has and will continue to incur significant additional damages in investigating, defending against and/or resolving the above-described claims against the *Bonds*. Moreover, GAIC may be exposed to substantial additional financial liability should any of the claimants prevail on their pending claims.

46.  GAIC has made numerous demands upon the INDEMNITORS for documentation related to the Projects, and for other records pertaining to the pending claims against the *Bonds*, such demands going unanswered.

47.  GAIC's losses and expenses will continue to increase as a result of ALPHATEC's complete failure and/or refusal to cooperate with GAIC's efforts to address the pending claims against the *Bonds*, including the INDEMNITORS' production of the requisite information and documentation relative to the Projects.

48.  GAIC has retained the services of the undersigned counsel to represent its interests in this matter and is required to pay a reasonable fee for such services.

49.  Pursuant to Second Article of the *Indemnity Agreement*, the INDEMNITORS, jointly and severally, agreed to be liable for, and agreed that GAIC was entitled to recover from the INDEMNITORS, any and all attorneys' fees and costs incurred in the prosecution of any action under the *Indemnity Agreement*.

CASE NO.: _____

## COUNT I - SPECIFIC PERFORMANCE / INJUNCTIVE RELIEF
## DEMAND FOR POSTING OF COLLATERAL (AGAINST INDEMNITORS)

50.     GAIC re-alleges and re-avers the allegations of paragraphs 1 through 48 hereof, as if fully set forth herein.

51.     This is an action for specific performance seeking equitable relief.

52.     There exists a valid and fully enforceable contract between GAIC and the INDEMNITORS, the terms of which are memorialized in the *Indemnity Agreement*.

53.     GAIC has fully performed all of its obligations under the *Indemnity Agreement*.

54.     As a result of the various pending claims against the *Bonds*, GAIC has made demand upon the INDEMNITORS under the *Indemnity Agreement* to post collateral to cover GAIC's potential losses and expenses.

55.     Despite such demand, the INDEMNITORS have failed and/or refused to fully perform their obligations under the *Indemnity Agreement*, including but not limited to their obligation to post satisfactory collateral upon demand by GAIC.

56.     INDEMNITORS' failure to deposit the demanded collateral with GAIC in accordance with the *Indemnity Agreement* has and continues to cause irreparable harm for which GAIC has no adequate remedy at law.

57.     Pursuant to the Third Article of the *Indemnity Agreement*, the INDEMNITORS specifically acknowledged GAIC's right to specific performance and injunctive relief in enforcing the posing of collateral.

58.     GAIC is fearful and apprehensive that the INDEMNITORS are or will become financially unable to pay any amounts that may be found owing to BEC, Johnson-Laux or any other claimant(s) against the *Bonds* for which GAIC may be liable, or that the INDEMNITORS, based upon their refusal to exonerate GAIC in accordance with its demands, will sell, transfer,

dispose of, lien, secure or otherwise divert or conceal their assets. GAIC is also fearful and apprehensive that the INDEMNITORS will be financially unable to pay the expenses incurred by GAIC, including attorneys' fees.

59.     GAIC is entitled to legal and equitable relief for specific performance of the INDEMNITORS' obligation to post satisfactory collateral.

60.     In the absence of the equitable relief sought herein, GAIC will suffer irreparable damage and loss because it will be forced to advance further funds in connection with the claims on the *Bonds* without being adequately secured by the INDEMNITORS for its obligations under the *Bonds*.

61.     By virtue of the rights under the *Indemnity Agreement*, GAIC is entitled to have the INDEMNITORS post funds or other security with GAIC that is sufficient to cover the actual and/or anticipated losses and claims under the *Bonds*.

62.     Unless the relief in the nature herein requested or its equivalent is granted, GAIC's equitable rights will be forever lost, depriving GAIC of adequate security for its obligations under the *Bonds*. Further, unless the equitable relief requested below is granted, the INDEMNITORS are likely to sell, transfer, dispose, lien, secure, or otherwise, divert their assets from being used to discharge INDEMNITORS' obligations to exonerate GAIC.

63.     GAIC has a high probability of success on the merits, as ALPHATEC's failure to satisfy the claims against the *Bonds,* coupled with the pending allegations of ALPHATEC's default on the Projects, have clearly triggered the INDEMNITORS' obligations under the *Indemnity Agreement*. GAIC has duly performed its duties, obligations and conditions under the *Indemnity Agreement* and the *Indemnity Agreement* provides for the relief sought in this count.

CASE NO.: _____

64.     The threatened injury to GAIC outweighs the potential damage to the INDEMNITORS if the relief requested herein is granted, and such relief would not be adverse to the public interest.

WHEREFORE, Plaintiff GAIC respectfully requests that this Honorable Court enter a *Final Judgment* in its favor and against the Defendants INDEMNITORS, granting GAIC specific performance of the *Indemnity Agreement* by directing the INDEMNITORS to provide satisfactory collateral to GAIC to cover GAIC's actual and/or potential losses and expenses, awarding GAIC its attorneys' fees and costs incurred in prosecution of the instant action pursuant to the terms of the *Indemnity Agreement*, and awarding GAIC such other and further relief as this Court deems necessary, just and proper.

**COUNT II - BREACH OF CONTRACT:**
**SPECIFIC PERFORMANCE / DEMAND FOR PRODUCTION**
**OF BOOKS AND RECORDS (AGAINST INDEMNITORS)**

65.     GAIC re-alleges and re-avers the allegations of paragraphs 1 through 48 hereof, as if fully set forth herein.

66.     This is an action for specific performance seeking equitable relief.

67.     There exists a valid and fully enforceable contract between GAIC and the INDEMNITORS, the terms of which are memorialized in the *Indemnity Agreement*.

68.     Pursuant to the Third Article of the *Indemnity Agreement*, each of the INDEMNITORS agreed to provide GAIC with complete access to the INDEMNITORS' books, records and accounts.

69.     GAIC has fully performed all of its obligations under the *Indemnity Agreement*.

CASE NO.: _____

70.     As a result of the pending claims against the *Bonds*, GAIC has made demand upon the INDEMNITORS under the *Indemnity Agreement* to provide access to GAIC for the inspection of all of the INDEMNITORS' financial books, records, and accounts.

71.     Despite GAIC's best efforts, the INDEMNITORS have failed and/or refused to fully perform their obligations under the *Indemnity Agreement*, including but not limited to their obligation to provide GAIC with access to the books, records, and accounts of the INDEMNITORS.

72.     The INDEMNITORS' failure to provide access to their books, records, and accounts in accordance with the *Indemnity Agreement* has and continues to cause irreparable harm for which GAIC has no adequate remedy at law.

73.     GAIC is entitled to equitable relief for specific performance of the INDEMNITORS' obligations to produce their books, records, and accounts.

WHEREFORE, Plaintiff GAIC respectfully requests that this Honorable Court enter a *Final Judgment* in its favor and against the Defendants INDEMNITORS, granting GAIC specific performance of the *Indemnity Agreement* by directing the INDEMNITORS to immediately produce to GAIC for inspection and/or copying all of their books, records, and accounts, awarding GAIC its attorneys' fees and costs incurred in prosecution of the instant action pursuant to the terms of the *Indemnity Agreement*, and awarding GAIC such other and further relief as this Court deems necessary, just and proper.

**COUNT III - CONTRACTUAL
EXONERATION (AGAINST INDEMNITORS)**

74.     GAIC re-alleges and re-avers the allegations of paragraphs 1 through 48 hereof, as if fully set forth herein.

CASE NO.: _____

75.     This is an action for contractual exoneration.

76.     As a proximate result of the INDEMNITORS' breach of their obligations under the *Indemnity Agreement*, GAIC has incurred unpaid losses and loss adjustment expenses (including but not limited to expenses associated with experts, consultants and attorneys) associated with its investigation, defense and/or handling of the above-described pending claims against the *Bonds*. Additional indebtedness under the *Indemnity Agreement* due and owing from the INDEMNITORS to GAIC will continue to accrue, including but not limited to the expenditure of funds paid: (i) in defense of the pending claims; (ii) in resolution of the pending claims; and/or (iii) in satisfaction of any liability which may ultimately be determined in favor of any claimants under the *Bonds* against GAIC.

77.     Pursuant to the terms of the Second Article of the *Indemnity Agreement*, the INDEMNITORS agreed to immediately provide GAIC with sufficient funds to cover any actual and/or potential losses under the *Bonds*.

78.     By virtue of the right of exoneration set forth in the *Indemnity Agreement*, GAIC is entitled to the INDEMNITORS' assets to protect GAIC from any and all losses and/or expenses which may be incurred in connection with GAIC's issuance of the *Bonds*.

79.     INDEMNITORS have failed and/or refused to satisfy their obligations under the *Indemnity Agreement* by refusing to exonerate or otherwise place funds with GAIC sufficient to cover the actual losses and claims against the *Bonds*.

80.     Unless the personal assets of the INDEMNITORS are collateralized, GAIC will not be adequately secured for its obligation on the *Bonds*.

WHEREFORE, Plaintiff GAIC respectfully requests that this Honorable Court enter a *Final Judgment* in its favor and against the Defendants INDEMNITORS, requiring the

16

CASE NO.: _____

INDEMNITORS to perform under the *Indemnity Agreement* as follows: (a) pay and reimburse GAIC the sums that GAIC has paid to date for losses and/or expenses incurred as a result of having issued the *Bond*; (b) provide collateral to GAIC sufficient to exonerate GAIC for its potential loss and expenses to be incurred; (c) pay and reimburse GAIC for its attorneys' fees and costs incurred in prosecution of the instant action; and (d) award GAIC such other and further relief as this Court deems necessary, just and proper.

## COUNT IV - COMMON LAW
## EXONERATION (AGAINST ALPHATEC)

81.     GAIC re-alleges and re-avers the allegations of paragraphs 1 through 48 hereof, as if fully set forth herein.

82.     This is an action for exoneration at common law and in equity.

83.     There exists a special relationship between GAIC, as surety, and ALPHATEC, as principal, arising out of the parties' business dealings related to the Projects and *Bonds*, such that it is appropriate for common law exoneration to exist.

84.     GAIC has fully and completely performed any and all obligations arising out of the parties' business dealings related to the Projects and *Bonds*, and is wholly without fault for any losses, expenses and/or liabilities which have and/or may ultimately arise therefrom.

85.     As a proximate result of the INDEMNITORS' breach of their obligations under the *Indemnity Agreement*, GAIC has incurred unpaid losses and loss adjustment expenses (including but not limited to expenses associated with experts, consultants and attorneys) associated with its investigation, defense and/or handling of the above-described pending claims against the *Bonds*. Additional indebtedness under the *Indemnity Agreement* due and owing from the INDEMNITORS to GAIC will continue to accrue, including but not limited to the expenditure of funds paid: (i) in

17

CASE NO.: _____

defense of the pending claims; (ii) in resolution of the pending claims; and/or (iii) in satisfaction of any liability which may ultimately be determined in favor of any claimants under the *Bonds* against GAIC.

86.     Any and all losses and expenses incurred to date as a result of the special relationship between GAIC and ALPHATEC, as well as any liability which may be imposed upon GAIC as a result of the pending claims against the *Bonds*, arise only out of the vicarious, constructive, derivative or technical liability imposed upon GAIC as a result of the fault and/or wrongdoing of ALPHATEC.

87.     At common law, ALPHATEC is responsible to GAIC for any and all losses and expenses incurred or to be incurred, and ALPHATEC is further obligated to immediately provide GAIC with sufficient funds as needed to satisfy GAIC's existing and potential obligations under the *Bonds*.

88.     By virtue of the right of exoneration set forth at common law and in equity, GAIC is entitled to ALPHATEC's assets to protect GAIC from any and all losses and/or expenses which may be incurred in connection with GAIC's issuance of the *Bonds*.

89.     ALPHATEC has failed and/or refused to satisfy their obligations at common law and in equity by refusing to exonerate or otherwise place funds with GAIC sufficient to cover the actual losses and claims against the *Bonds*.

90.     Unless the personal assets of ALPHATEC are collateralized, GAIC will not be adequately secured for its obligation on the *Bonds*.

WHEREFORE, Plaintiff GAIC respectfully requests that this Honorable Court enter a *Final Judgment* in its favor and against the Defendant ALPHATEC, requiring ALPHATEC to exonerate GAIC at common law and in equity as follows: (a) pay and reimburse GAIC the sums

CASE NO.: _____

that GAIC has paid to date for losses and/or expenses incurred as a result of having issued the *Bonds*; (b) provide collateral to GAIC sufficient to exonerate GAIC for its potential loss and expenses to be incurred; (c) pay and reimburse GAIC for its attorneys' fees and costs incurred in prosecution of the instant action; and (d) award GAIC such other and further relief as this Court deems necessary, just and proper.

## COUNT V - BREACH OF CONTRACT: DAMAGES /
## DEMAND FOR INDEMNIFICATION (AGAINST INDEMNITORS)

91.     GAIC re-alleges and re-avers the allegations of paragraphs 1 through 48 hereof, as if fully set forth herein.

92.     This is an action for damages seeking relief at law under the *Indemnity Agreement*.

93.     There exists a valid and fully enforceable contract between GAIC and the INDEMNITORS, the terms of which are memorialized in the *Indemnity Agreement*.

94.     GAIC has fully performed all of its obligations under the *Indemnity Agreement*.

95.     As a result of the pending claims against the *Bonds*, GAIC has made demand upon the INDEMNITORS under the *Indemnity Agreement* for the payment in satisfaction of the losses and expenses incurred by GAIC.

96.     The INDEMNITORS have failed and/or refused to fully perform their obligations under the *Indemnity Agreement*, including but not limited to their obligation to indemnify GAIC.

97.     As a proximate result of the INDEMNITORS' breach of their obligations under the *Indemnity Agreement*, GAIC has incurred unpaid losses and loss adjustment expenses (including but not limited to expenses associated with experts, consultants and attorneys) associated with its investigation, defense and/or handling of the above-described pending claims against the *Bonds*. Additional indebtedness under the *Indemnity Agreement* due and owing from the INDEMNITORS

19

CASE NO.: _____

to GAIC will continue to accrue, including but not limited to the expenditure of funds paid: (i) in defense of the pending claims; (ii) in resolution of the pending claims; and/or (iii) in satisfaction of any liability which may ultimately be determined in favor of any claimants under the *Bonds* against GAIC.

WHEREFORE, Plaintiff GAIC respectfully requests that this Honorable Court enter a *Final Judgment* in its favor and against the Defendants INDEMNITORS, awarding GAIC its general, special and consequential damages which have been and/or will be incurred as a result of the INDEMNITORS' breach of the *Indemnity Agreement*, awarding GAIC its attorneys' fees and costs incurred in prosecution of the instant action pursuant to the terms of the *Indemnity Agreement*, and awarding GAIC such other and further relief as this Court deems necessary, just and proper.

## COUNT VI - COMMON LAW INDEMNIFICATION (AGAINST ALPHATEC)

98.     GAIC re-alleges and re-avers the allegations of paragraphs 1 through 48 hereof, as if fully set forth herein.

99.     This is an action for damages seeking relief at common law and in equity.

100.     There exists a special relationship between GAIC, as surety, and ALPHATEC, as principal, arising out of the parties' business dealings related to the Projects and *Bonds*, such that it is appropriate for common law indemnification to exist.

101.     GAIC has fully and completely performed any and all obligations arising out of the parties' business dealings related to the Projects and *Bonds*, and is wholly without fault for any losses, expenses and/or liabilities which have and/or may ultimately arise.

CASE NO.: _____

102.    GAIC has incurred losses and loss adjustment expenses as a result of the special relationship between GAIC and ALPHATEC. Additional indebtedness arising out of the special relationship has and will continue to accrue, including but not limited to the expenditure of funds paid: (i) in defense of the pending claims; (ii) in resolution of the pending claims; and/or (iii) in satisfaction of any liability which may ultimately be determined in favor of any claimants under the *Bonds* against GAIC.

103.    Any and all losses and expenses incurred to date as a result of the special relationship between GAIC and ALPHATEC, as well as any liability which may be imposed upon GAIC as a result of the pending claims against the *Bonds*, arise only out of the vicarious, constructive, derivative or technical liability imposed upon GAIC as a result of the fault and/or wrongdoing of ALPHATEC.

104.    At common law, ALPHATEC is responsible to GAIC for any and all losses and expenses incurred or to be incurred.

WHEREFORE, Plaintiff GAIC respectfully requests that this Honorable Court enter a *Final Judgment* in its favor and against the Defendant ALPHATEC, awarding GAIC its general, special and consequential damages which have been and/or will be incurred as a result of GAIC's payment of losses and expenses for which ALPHATEC should be liable under the legal theory of common law indemnity, awarding GAIC its reasonable attorneys' fees and costs incurred in prosecution of the instant action, and awarding GAIC such other and further relief as this Court deems necessary, just and proper.

CASE NO.: _____

## COUNT VII - QUIA TIMET
## (AGAINST INDEMNITORS)

105.    GAIC re-alleges and re-avers the allegations of paragraphs 1 through 48 hereof, as if fully set forth herein.

106.    This is an action for *quia timet* seeking injunctive and equitable relief.

107.    Various claimants, including, BEC and Johnson-Laux, have asserted claims and made demands upon GAIC to satisfy its obligations under the *Bonds*.

108.    GAIC has provided notice to and demanded indemnity and exoneration from the INDEMNITORS under the terms of the *Indemnity Agreement*, requiring the INDEMNITORS to post collateral sufficient to defray actual and/or potential losses and expenses in connection with the *Bonds*.

109.    The INDEMNITORS have failed and/or refused to satisfy their obligations under the *Indemnity Agreement* by refusing to exonerate or otherwise post collateral with GAIC sufficient to cover the actual and/or potential losses and expenses incurred by GAIC.

110.    As a result of the INDEMNITOR's breach of the *Indemnity Agreement*, GAIC has sustained losses, damages, costs, expenses and attorneys' fees by reason of having furnished and executed the *Bonds*.

111.    GAIC is fearful and apprehensive that the INDEMNITORS are or will become financially unable to pay any amounts that may be found owing to BEC or any other claimant against the *Bonds* for which GAIC may be liable, or that the INDEMNITORS, based upon their refusal to exonerate GAIC in accordance with its demands, will sell, transfer, dispose of, lien, secure or otherwise divert or conceal their assets. GAIC is also fearful and apprehensive that the INDEMNITORS will be financially unable to pay the expenses incurred by GAIC, including attorneys' fees.

22

CASE NO.: _____

112.    In the absence of the equitable relief sought herein, GAIC will suffer irreparable damage and loss because it will be forced to advance further funds in connection with the claims on the *Bonds* without being adequately secured by the INDEMNITORS for its obligations under the *Bonds*.

113.    By virtue of the rights under the *Indemnity Agreement* and the common law and equitable doctrine of *quia timet*, GAIC is entitled to have the INDEMNITORS post funds or other security with GAIC that is sufficient to cover the actual and/or anticipated losses and claims under the *Bonds*.

114.    Unless the relief in the nature herein requested or its equivalent is granted, GAIC's equitable right of *quia timet* will be forever lost, depriving GAIC of adequate security for its obligations under the *Bonds*. Further, unless the equitable relief requested below is granted, INDEMNITORS are likely to sell, transfer, dispose, lien, secure, or otherwise, divert their assets from being used to discharge INDEMNITORS' obligations to exonerate GAIC.

115.    GAIC has a high probability of success on the merits, as the pending allegations of ALPHATEC's default on the Projects has clearly triggered the INDEMNITORS' obligations under the *Indemnity Agreement*. GAIC has duly performed its duties, obligations and conditions under the *Indemnity Agreement* and the *Indemnity Agreement* provides for the relief sought in this count.

116.    The threatened injury to GAIC outweighs the potential damage to the INDEMNITORS if the relief requested herein is granted, and such relief would not be adverse to the public interest.

WHEREFORE, Plaintiff GAIC respectfully requests that this Honorable Court enter a *Final Judgment* in its favor and against the Defendants INDEMNITORS, awarding GAIC its

general, special and consequential damages which have been and/or will be incurred (including

GAIC's attorneys' fees and costs under the *Indemnity Agreement*), and ordering Defendants

INDEMNITORS to <u>immediately</u> post collateral with GAIC (or deposit with the Clerk of this Court,

for the benefit and protection of GAIC) in an amount to be determined by this Court to cover

GAIC's anticipated losses and expenses in connection with the *Bonds*. In the alternative, GAIC

respectfully requests that this court order the INDEMNITORS to: (a) render a full and complete

accounting of all assets owned by them or which they have an interest; (b) allow full and complete

access to all financial books, records and accounts maintained by them; (c) refrain from selling,

transferring or disposing of their assets including, but not limited to, sums held in offshore

accounts; (d) grant to GAIC an equitable lien upon all assets and property of the INDEMNITORS

including, but not limited to, realty, personally and mixed, owned by the INDEMNITORS, and

property in which the INDEMNITORS have any interest, to remain in effect until the

INDEMNITORS place funds with GAIC as required by the *Indemnity Agreement* securing GAIC

against any loss it has sustained or will sustain by virtue of it having executed the *Bonds*; and (e)

award GAIC such other and further relief as this Court deems necessary, just and proper.


DATED this <u>22</u>nd     day of March 2023.

**ETCHEVERRY HARRISON LLP**
Attorneys for GAIC
150 South Pine Island Road, Suite 105
Ft. Lauderdale, FL 33324
ne: (954) 370-1681
Fax: (954) 370-1682

By:  /s/ *Edward Etcheverry*
Edward Etcheverry, Fla. Bar No.: 856517
Jeffrey S. Geller, Fla. Bar No.: 63721